No. 33,916

C. E. GODLOVE, *Appellant,* v. THE CITY OF TOPEKA, *Appellee.*

(81 P. 2d 39)

Opinion filed July 9, 1938.

*Edward Rooney* and *Jacob A. Dickinson,* both of Topeka, for the appellant.

*Ralph Oman,* city attorney, and *William A. Dumars,* assistant city attorney, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for money. Judgment was for defendant sustaining a demurrer to the petition. Plaintiff appeals.

The petition alleged that plaintiff was a resident of Topeka and that Topeka was a city and had a population of more than 50,000 and less than 90,000. It further alleged that plaintiff became an employee of the city in 1912 and that he continued in such employment until April 12, 1937, at which time he retired on account of being disabled by disease contracted by him while in the performance of his duties as an employee of the city. The petition described the disease and disability from which plaintiff suffered and alleged that he was permanently disabled from performing his duties.

The petition then alleged that at the time of his disability plaintiff was receiving $215 per month and that by virtue of chapter 124 of the Laws of 1931 he was entitled to receive fifty percent of this monthly wage during the remainder of his life.

The petition then alleged that on April 9, 1937, plaintiff filed his application for such pension in writing and that on April 16, 1937, the city commission disallowed the claim and refused to pay it.

Plaintiff prayed judgment against the city in the sum of $107.50 per month, to continue during the remainder of the life of plaintiff.

The city answered by a general denial and a further allegation that the disability of plaintiff was not due to disease contracted by plaintiff while in the performance of his duties as a city employee.

Just as the cause was ready for trial the city requested permission to withdraw its answer and file a demurrer in lieu thereof. This permission was granted and defendant demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action and on the ground that the court had no jurisdiction to determine the issues raised in the petition. The court sustained this demurrer on the ground that the petition did not state sufficient facts to constitute a cause of action.

Plaintiff appeals from that judgment.

Chapter 124 of the Laws of 1931 is now G. S. 1935, 13-1481 to 13-1487, inclusive. These sections read as follows:

"Any city having a population of more than 50,000 and less than 90,000 in-

habitants is hereby authorized and directed to provide funds for the relief and pensioning of all city employees, other than members of the police and fire departments, in accordance with the provisions of this act." (G. S. 1935, 13-1481.)

"The governing body of any city coming under the provisions of this act may pay monthly to any employee who shall become physically disabled by reason of injuries received by him, or disease contracted by him, while in the performance of his duty and attributable thereto, a sum equal to fifty (50) percent of the monthly wages such person was receiving at the time of such injuries or disability, during the time such employee is unable to perform his duty: *Provided,* That the governing body at any time may compel such employee to submit to an examination by a physician or physicians selected by the governing body, and refusal by such employee so to do shall prevent him from receiving any further sum of money under this act." (G. S. 1935, 13-1482.)

"Any employee more than sixty-five (65) years of age and having served thirty (30) years or more in such city, of which the last two years shall have been continuous, may make application to the governing body to be retired, and upon such application being granted the governing body shall pay monthly to such employee so retired a sum equal to fifty (50) percent of the salary or wages which such employee was receiving at the time of his retirement. All payments to cease at the death of said employee." (G. S. 1935, 13-1483.)

"The governing body of any city operating under this act may at any time it cares to do so retire any employee after he has reached the age of sixty-five (65) years or over, providing said employee has served the city for twenty (20) years or more. Upon such retirement the governing body shall pay monthly to such employee so retired a sum equal to fifty (50) percent of the salary or wages which such employee was receiving at the time of his retirement; all payments to cease at the death of said employee." (G. S. 1935, 13-1484.)

"In all cities coming under the provisions of this act there shall be levied annually at the time of the levy of taxes for city purposes, and in addition to taxes heretofore or otherwise authorized, for the purpose of paying such relief and pensions, a tax not to exceed one fifth ($\frac{1}{5}$) of one mill on all taxable property within the limits of the city." (G. S. 1935, 13-1485.)

"No employee who at any time subsequent to the time this act takes effect, and while not physically incapacitated, shall refuse or omit to perform the duties of his employment, without the written consent of the governing body of the city, shall be entitled to receive any of the payments herein provided for." (G. S. 1935, 13-1486.)

"All payments made or to be made as provided in this act shall be absolutely inalienable by any assignment, sale, execution or otherwise, and they shall not be subject to garnishment or attachment." (G. S. 1935, 13-1487.)

It is the theory of plaintiff that under the above sections it was mandatory on the city to provide the funds as directed by G. S. 1935, 13-1481, and that it was also mandatory on the city having

made the levy to proceed to make payments to members of the various classes of employees named in G. S. 1935, 13-1482, 13-1483 and 13-1484. Plaintiff contends that once he placed himself within one of these classes he became entitled to the payments. It should be noted here that plaintiff does not contend that the city commission acted unreasonably or arbitrarily in passing on his claim. His only contention is that he became permanently disabled by disease contracted by him while in the service of the city and is therefore entitled to be paid fifty percent of the wages he was receiving at the time of his disability, for the remainder of his life.

Defendant argues that the decision turns upon whether in the absence of any allegation of fraud, caprice or arbitrary or oppressive action on the part of the governing body of the city in the exercise of its discretion, the finding of the governing body is conclusive so that no judicial tribunal will substitute its judgment for that of the governing body.

In this connection two pension cases are brought to our attention. The first is *Penquite v. Dunn,* 123 Kan. 528, 256 Pac. 130. In that case the board of trustees of the firemen's pension fund had denied the application of the plaintiff to be retired from active service and to be granted pension benefits. The trial court made findings of fact and allowed the writ. On appeal this court examined the findings and reached the conclusion that the action of the pension board in denying the application of the plaintiff was arbitrary and oppressive. The decision of the trial court was affirmed. This court in considering the case referred to the fact that the statute creating the board of pensions made no provision that the action of the trustees should be final and conclusive.

The next case is *Garrety v. Cottman,* 138 Kan. 789, 28 P. 2d 756. That was also a case where the board of trustees of the firemen's pension fund had denied the application of the plaintiff to place him on the retired list. Between the time when the Penquite case had been decided and the filing of the Garrety case the statute had been amended to the effect that the action of the board should be final and conclusive. The proceeding was one in mandamus to compel the board of trustees to put him on the list. The trial court allowed the writ, but on appeal this court reversed the judgment. The decision turned largely upon the fact that the statute made the action of the board final and conclusive. The plaintiff in that case argued that such a construction was a holding that the board had arbitrary

power and such power has never been granted in this state. This court agreed with the contention that arbitrary power is never granted, but pointed out that the allegations were the board acted "arbitrarily and capriciously" and that as these words were used in the petition they were merely the expression of the pleader's conclusions. Naturally each time a person is placed on such a pension list, as is provided here, a question of fact must be determined. He must be found to have been physically disabled by reason of injuries received by him, or disease contracted by him, while in the performance of his duty, or he must be found to have reached the age of 65, and have served thirty years, the last two years of which must have been continuous or he must be found to have reached the age of sixty-five years, and have served the city twenty years or more.

This statute is unlike the one creating the firemen's pension fund at Wichita, in that in the firemen's statute it provided for the creation of a board of trustees of the firemen's pension fund and gave this board authority to make the necessary findings. (See G. S. 1935, 13-718 to 13-729, 13-735 and 13-739 to 13-744.)

In the statute we are considering, no provision is made for such a body. Perhaps the city governing body could create such a body and provide rules for the conduct of its business and for the hearing of applications. We have not found it necessary, however, to reach such a conclusion in the decision of this case.

It is plain, however, that the governing body of the city must make the levy and may make the payments. It is plain, too, that the governing body of the city may compel a person retired for disability to submit to an examination at any time and refusal by such employee to submit shall prevent him from receiving more payments. (See G. S. 1935, 13-1482.) Undoubtedly this provision is to enable the governing body to take him off the pension list if he recovers from his disability. We conclude from all these provisions in the statute that the governing body has the duty or power to make the necessary findings as to the facts. While it might not necessarily make formal findings it must reach a conclusion based on facts found. This entails, of necessity, a hearing where an applicant has an opportunity to be heard.

Having reached this conclusion we shall be able to decide the case by rules announced many times by us that a court will not substitute its judgment for that of a body such as a governing body of a city on a matter within the discretion of the governing body,

as long as it does not appear that the action of the governing body was arbitrary or capricious. In *City of Emporia v. Railway Co.*, 88 Kan. 611, 129 Pac. 161, the railway company attacked an ordinance of the city directing it to open a street where to open it would require the building of a subway. This court said:

"The courts have no supervisory power over the policy of municipal legislation. They can only interfere to curb action which is *ultra vires* because of some constitutional impediment or lack of antecedent legislative authority, or because the action is so arbitrary, capricious, unreasonable and subversive of private right as to indicate a clear abuse rather than a bona fide exercise of power." (p. 614.)

While the board making the finding was not a governing body of a city, the above case was followed in *Photo Play Corporation v. Board of Review*, 102 Kan. 356, 169 Pac. 1154. In that case the statute required moving picture films to be submitted in a board of review before being shown in the state. A film was exhibited to the board which withheld its approval on the ground that it was immoral and not fit for exhibition. The plaintiff alleged that, as a matter of fact, the film was not obscene, indecent or immoral. The action was in the nature of an appeal from the action of the board. This appeal was provided for by the statute. The trial court overruled a demurrer to the petition. In considering the appeal from that judgment, this court examined the statute that allowed the appeal from the action of the board. This court then said:

"What is the redress provided? Manifestly, it is such redress as a court can give, and not an exercise of executive or administrative power. A reexamination of the picture to determine whether it was moral and fit for exhibition would be an exercise of administrative power, and that discretion and power was specially conferred upon the board. It would result in the substitution of the judgment of the court for that of the board in a pure matter of administration, which the legislature could not and evidently did not intend to confer upon the district court. It is fundamental that courts cannot be required or permitted to exercise any power or function except those of a judicial nature." (p. 358.)

The judgment was reversed.

To the same effect is *Drainage District v. Drainage District*, 104 Kan. 233, 178 Pac. 433; also, *Decker v. City of Wichita*, 109 Kan. 796, 202 Pac. 89.

It will be remembered that there is no provision in the statute we are considering for an appeal to the courts. In this connection the holding of this court in *In re Chicago, R. I. & P. Rly. Co.*, 140 Kan.

465, 37 P. 2d 7, is of interest. In that case the railway company had filed with the state tax commission an application for a refund of taxes. This application was denied and the railway company filed an appeal from that decision with the district court. Motions to dismiss the appeal were sustained and the company appealed. This court said:

"Apart from the general appellate jurisdiction of the district court over all inferior tribunals exercising judicial powers conferred by the civil code (R. S. 60-3301), that court has no inherent appellate jurisdiction over the official acts of public boards or public officers. Where the latter do not transcend their statutory powers nor act fraudulently or oppressively their official acts cannot be challenged in court except where the legislature has made some special provision for a judicial review." (p. 467.)

See, also, *National Bank of Topeka v. State,* 146 Kan. 97, 68 P. 2d 1076, also, *Union Pac. Rld. Co. v. State Tax Comm.,* 145 Kan. 715, 68 P. 2d 1. Other courts have considered the very question of whether the action of a board in refusing a pension may be reviewed by the courts.

In *McCarthy v. Couzens,* 214 Mich. 501, the question was whether a fireman had died from injuries received in the discharge of his duty. The fire commission denied the application of his widow for a pension. She brought mandamus. The court said:

"In passing upon the issue of fact before the commission at its hearing of April 20, 1916, its action is not shown to have been fraudulent, arbitrary or capricious. In the absence of such showing the action of the commission must be deemed final and we have no right to interfere by mandamus, no right to substitute our judgment or discretion for that of the commission." (p. 506.)

*McColgan v. Board of Police Commrs.,* 130 Cal. App. 66, 19 P. 2d 815, was a case where the widow of a policeman sought a pension. It was denied. She brought mandamus. The court said:

"Still assuming that the defendant board did render a decision, that decision is under the facts *res judicata.* The general rule on the subject is quoted with approval in *Mogan v. Board of Police Commrs.,* 100 Cal. App. 270, at page 273 (279 P. 1080, 1081), as follows: 'As a general rule, whenever any person or persons have authority to hear and determine any question, their determination is, in effect, a judgment having all the incidents and properties attached to a similar judgment pronounced in any regularly created court of limited jurisdiction acting within the bounds of its authority. Hence, whenever any board, tribunal or person is by law vested with authority to decide a question, such decision, when made, is *res judicata,* and as conclusive of issues involved in the decision as though the adjudication had been made by a court of general jurisdiction." (p. 68.)

The cases are cited and approved in 6 McQuillin on Municipal Corporations, 2 ed., § 2582, p. 518.

Plaintiffs argue here that the word "may" as used in G. S. 1935, 13-1482, should be construed to mean "shall" and that it is the duty of the governing body to proceed to pay pensions as provided for in the act. Just what we would hold on the question of whether the statute is mandatory, making it the duty of the governing body to proceed to pay pensions to those entitled thereto pursuant to the statute, we are not called on to answer here. The only question we have is whether one particular individual, the plaintiff in this case, is entitled to a judgment for the payments. On that question we hold that the decision of the governing body was final since neither arbitrariness nor caprice on the part of the governing body was alleged in the petition and the court may not substitute its judgment for the judgment of the governing body.

The judgment of the trial court is affirmed.